## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| COURTNEY COOPER and ABDO P. FAISSAL, derivatively on behalf of PELOTON INTERACTIVE, INC., | Case No.: |
| Plaintiffs, | **VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| KAREN BOONE, JON CALLAGHAN, ELIZABETH F. CODDINGTON, THOMAS CORTESE, JOHN FOLEY, JAY HOAG, BARRY MCCARTHY, ANGEL L. MENDEZ, JONATHAN MILDENHALL, PAMELA THOMAS-GRAHAM, AND JILL WOODWORTH, | |
| Defendants, | |
| and | |
| PELOTON INTERACTIVE, INC., | |
| Nominal Defendant. | |

## **INTRODUCTION**

Plaintiffs Courtney Cooper ("Cooper") and Abdo P. Faissal ("Faissal") (collectively, "Plaintiffs"), by and through their undersigned counsel, derivatively on behalf of Nominal Defendant Peloton Interactive, Inc. ("Peloton" or the "Company"), submit this Verified Stockholder Derivative Complaint against Defendants (as defined herein) and allege the following upon information and belief, except as to those allegations concerning Plaintiffs, which are alleged upon personal knowledge. Plaintiffs' information and belief is based upon, among other things, their counsel's investigation, which included, *inter alia*, review and analysis of (i) regulatory filings made by Peloton with the United States Securities and Exchange Commission ("SEC"); (ii) press releases issued and disseminated by Peloton; (iii) securities class action complaints against

certain officers and members of the Company's Board of Directors (the "Board") alleging issuance of false and misleading statements of material fact and the omission of material facts necessary to make other statements made not misleading, between May 10, 2022 and May 10, 2023 (the "Relevant Period") with respect to Peloton's business, operations, and prospects; and (iv) other publicly available information, including media and analyst reports, concerning Peloton.

## NATURE OF THE ACTION

1.      This is a stockholder derivative action asserted on behalf of Nominal Defendant Peloton against certain officers and the members of the Company's Board for breaches of fiduciary duties, to recover damages caused to the Company as described below.

2.      Peloton is an interactive fitness platform focusing on the streaming of workout classes and the sale of its stationary bicycles, Bike and Bike+ (together, "Peloton Bikes"), and treadmills, Tread and Tread+.

3.      As discussed below, during the Relevant Period, the Company assured stockholders that Peloton Bikes were safe and represented that there was a decrease in the need to book additional reserves for potential future product recall expenses.  As alleged in the Securities Class Action (defined below), defendants in that action failed to disclose to investors that: (i) the seat posts for certain of the Company's Peloton Bikes were prone to break or otherwise detach during use, rendering bicycles unsafe for users; (ii) as a result, the Company was likely to recall millions of Peloton Bikes; (iii) accordingly, Peloton overstated its efforts to enhance the safety of its products, understated its estimated future returns, and downplayed the Company's need to book additional reserves for future product recall expenses; and (iv) as a result, Defendants' statements about Peloton's business, operations, and prospects were materially false and misleading and lacked a reasonable basis at all relevant times.

4. On May 11, 2023, the United States Consumer Product Safety Commission ("the CPSC") ordered the Company to recall its Peloton Bikes after numerous accidents were reported due to a malfunction in the bikes' seat post assembly. The CPSC's product recall affected roughly 2.2 million Peloton Bikes. In its press release, the CPSC stated that "[t]he bike's seat post assembly can break during use, posing fall and injury hazards to the user."

5. On this news, Peloton's Class A common stock price fell $0.67 per share, or 8.9%, to close at $6.86 per share on May 11, 2023.

6. The securities class action was filed on June 9, 2023. *See*, *Solomon v. Peloton Interactive, Inc.*, Case No. 1:23-cv-04279-MKB-JRC, in the United States District Court for the Eastern District of New York against Peloton and Defendants Coddington, McCarthy, and Woodworth (the "Securities Class Action").

7. This is not the first time that the CPSC demanded that Peloton recall its products. In 2021, the CPSC had ordered the recall of Peloton's Tread and Tread+ products after numerous accidents were reported, including the death of a child.

8. Plaintiffs seek to recover from defendants the damages caused to Peloton as a result of the misconduct alleged herein during the Relevant Period.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the Complaint alleges a claim for violations of Section 10(b) and 20(a) of the Securities Exchange Act (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder as well as Section 14 of the Exchange Act and SEC Rule 14a-9 promulgated thereunder. The Court has supplemental jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367(a) because the state

law claims form part of the same case or controversy. This action is not a collusive one designed to confer jurisdiction on a court of the United States that it would not otherwise have.

10.     This Court has jurisdiction over each defendant because they reside in this District or have sufficient minimum contacts with this District to render the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. The Court has personal jurisdiction over the Nominal Defendant because it is authorized to do business in this state and has consented to service in this state.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because one or more of the Defendants either resides in or maintains offices in this District; a substantial portion of the transactions and wrongs complained of herein, including the Defendants' primary participation in the wrongful acts detailed herein and violation of fiduciary duties owed to Peloton occurred in this District; and Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

12.     Plaintiff Cooper is a stockholder of Peloton. She was a stockholder at the time of the wrongdoing and has continuously held stock in the Company at all times relevant to the wrongdoing by Defendants alleged herein.

13.     Plaintiff Faissal is a stockholder of Peloton. He was a stockholder at the time of the wrongdoing and has continuously held stock in the Company at all times relevant to the wrongdoing by Defendants alleged herein.

14.     Nominal Defendant Peloton is incorporated under the laws of Delaware, and its principal executive offices are located in New York, New York. Peloton's common stock trades on the Nasdaq exchange under the symbol "PTON."

15.     Defendant Karen Boone ("Boone") has served as a member of the Board since January 2019 and as its Chairperson since September 2022. Boone has served as the Chair of the Audit Committee since at least 2020.

16.     Defendant Jon Callaghan ("Callaghan") has served as a member of the Board since April 2015 and served as a member of the Audit Committee since at least 2020.

17.     Defendant Elizabeth F. Coddington ("Coddington") has served as Peloton's Chief Financial Officer ("CFO") since June 13, 2022.

18.     Defendant Thomas Cortese ("Cortese") is one of Peloton's co-founders. Cortese served as Chief Operating Officer ("COO") from February 2012 until August 2021 and also served as Head of Product Development from April 2019 to August 2021. He has served as the Company's Chief Product Officer since August 2021.

19.     Defendant John Foley ("Foley") is one of Peloton's co-founders. Foley served as the Company's Chief Executive Officer ("CEO") from June 2012 to February 2022. He also served as Chairman of the Board from April 2015 until he officially stepped down in September 2022.

20.     Defendant Jay Hoag ("Hoag") has served as a member of the Board since August 2018. Hoag served as a member of the Audit Committee in 2021.

21.     Defendant Barry McCarthy ("McCarthy") is the Company's CEO and President and has served as a member of the Board since February 2022.

22.     Defendant Angel L. Mendez ("Mendez") has served as a member of the Board since February 2022 and serves as a member of the Audit Committee.

23.     Defendant Jonathan Mildenhall ("Mildenhall") has served as a member of the Board since February 2022.

24.     Defendant Pamela Thomas-Graham ("Thomas-Graham") has served as a member of the Board since March 2018.

25.     Defendant Jill Woodworth served as the Chief Financial Officer ("CFO") from April 2018 to June 2022.

26.     The following Defendants are hereinafter referred to as the "Individual Defendants": Boone, Callaghan, Coddington, Cortese, Foley, Kushi, Hoag, McCarthy, Mendez, Mildenhall, Thomas-Graham, and Woodworth.

27.     The following Individual Defendants are hereinafter referred to as the "Director Defendants": Boone, Callaghan, Foley, Hoag, McCarthy, Mendez, Mildenhall, and Thomas-Graham.

28.     The following Individual Defendants are hereinafter referred to as the "Officer Defendants": Coddington, Cortese, Foley, Kushi, McCarthy, and Woodworth.

29.     The following Individual Defendants are hereinafter referred to as the "Audit Committee Defendants": Boone, Callaghan, and Mendez.

30.     The following Individual Defendants are hereinafter referred to as the "Securities Action Defendants": Coddington, McCarthy, and Woodworth.

31.     The following Individual Defendants are hereinafter referred to as the "Insider Trading Defendants": Cortese and Woodworth.

32.     The following chart identifies the Individual Defendants, their associated references herein, and other relevant information discussed in more detail below:

| Individual Defendants | Director Defendants | Officer Defendants | Insider Trading Defendants | Audit Committee Defendants | Securities Action Defendants |
|---|---|---|---|---|---|
| Boone | Jan-2019 Chair Sept. 2022-present | | | X (Chair) | |
| Callaghan | Apr. 2015-present | | | X | |
| Coddington | | CFO (June 13, 2022-present) | | | X |
| Cortese (Co-Founder) | | COO (Feb. 2012-2021) CPO (Aug. 2021-present) | X | | |
| Foley (Co-Founder) | Chair Apr. 2015-Sept. 2022 | CEO June 2012-Feb. 2022 | | | |
| Hoag | Aug 2018-present | | | X (2021-2022) | |
| McCarthy | Feb. 2022-present | (CEO and President) | | | X |
| Mendez | Feb. 2022-present | | | X | |
| Mildenhall | Feb. 2022-present | | | | |
| Thomas-Graham | Mar. 2018-present | | | | |
| Woodworth | | CFO (Apr. 2018-June 2022) | X | | X |

## THE INDIVIDUAL DEFENDANTS OWE FIDUCIARY
## DUTIES TO THE COMPANY AND ITS STOCKHOLDERS

33.    At all times relevant to this case, the conduct of the Individual Defendants was

governed by well-recognized rules to protect the Company and its stockholders, the members of

the public who had invested in Peloton.

34.    By reason of their positions as officers and/or directors of the Company and their

ability to control its business and corporate affairs, the Individual Defendants owed the Company

and its stockholders the fiduciary obligations of good faith, loyalty, and candor and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner.

35.     The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its stockholders to benefit all stockholders equally and not in furtherance of their personal interest or benefit.

36.     Each of the Company's directors owes to the Company and its stockholders fiduciary duties of care and loyalty, including good faith, oversight, and candor, to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets.

37.     Because of their positions of control and authority as directors and/or officers of the Company, the Individual Defendants were able to and did, directly and/or indirectly, exercise control over the wrongful acts alleged herein.

38.     To discharge their duties, the Individual Defendants were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the Company. By virtue of such duties, the officers and directors of Peloton were required to do the following:

- Ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

- Conduct the affairs of the Company in a lawful, efficient, and business-like manner to make it possible for the Company to provide the highest quality

performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

- Properly and accurately inform investors and analysts as to the true financial condition of the Company at any given time, make accurate statements about the Company's financial results and prospects, and ensure that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

- Remain informed as to how the Company conducted its operations, and, upon notice of imprudent or unsound conditions or practices, make reasonable inquiry into the nature and cause of such conditions and practices, correct such conditions or practices, and make such disclosures as necessary to comply with federal and state securities laws; and

- Ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state, and local laws, rules, and regulations.

39.     As described herein, the Individual Defendants knowingly violated their obligations as directors and officers of the Company, acting without good faith and consciously disregarding their duties to the Company and its stockholders despite their knowledge of the risk of serious injury to the Company.

40.     Because of their positions of control and authority, the Individual Defendants were able to exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Peloton.

## DIRECTOR DEFENDANTS ON THE
## <u>AUDIT COMMITTEE OWE ADDITIONAL DUTIES</u>

41.     The Audit Committee Charter (the "Audit Charter") places additional duties and responsibilities upon the members of the Board's Audit Committee, which consisted of Boone (Chair), Callaghan, and Mendez during the Relevant Period.

42.     Pursuant to the Audit Charter, the overarching duties of the Audit Committee and its members include the following:

- Prior to distribution to the public, review and discuss with management, Peloton's quarterly and annual financial results, earnings guidance and earnings press releases, and other public announcements regarding Peloton's operating results.

- Review Peloton's quarterly and annual financial statements.

- Discuss with the Independent Auditors and management Peloton's critical accounting policies and practices.

- Review and discuss with the Independent Auditors and Peloton's management their periodic reviews of the adequacy and effectiveness of Peloton's accounting and financial reporting processes and systems of internal control over financial reporting, including any control deficiencies, significant deficiencies and material weaknesses in their design or operation, and any necessary audit processes or procedures adopted in light of any control deficiencies.

- Review any allegations of fraud involving management or any employee of Peloton with a significant role in Peloton's accounting and financial

reporting process and systems of internal controls that are disclosed to the
Committee.

- Discuss any comments or recommendations of the Independent Auditors
  outlined in their annual management letter or internal control reports.

- Review and discuss with management and the Independent Auditors
  management's report on internal control over financial reporting and the
  Independent Auditor's attestation report on the Company's internal control
  over financial reporting for purposes of the Company's Annual Report on
  Form 10-K, to the extent such reports are required.

- Consult with the Independent Auditors out of the presence of Peloton's
  management about internal controls, the fullness and accuracy of Peloton's
  financial statements and any other matters that the Committee or the
  Independent Auditors believe should be discussed privately with the
  Committee.

- Review with management Peloton's major financial risk and enterprise
  exposures and the steps management has taken to monitor or mitigate such
  exposures, including Peloton's procedures and any related policies with
  respect to risk assessment and risk management.

- Review with management Peloton's risk exposures in other areas, as the
  Committee deems necessary or appropriate from time to time.

- Review with management Peloton's (a) programs for promoting and
  monitoring compliance with applicable legal and regulatory requirements,

and (b) major legal and regulatory compliance risk exposures and the steps

management has taken to monitor or mitigate such exposures.

- Review the status of any significant legal and regulatory matters and any
  material reports or inquiries received from regulators or government
  agencies that could reasonably be expected to have a significant impact on
  Peloton's financial statements.

- Review related person transactions as defined by Item 404 of Regulation S-
  K on an ongoing basis in accordance with Peloton's Related Party
  Transactions Policy.

**PELOTON ISSUES FALSE AND MISLEADING,
STATEMENTS REGARDING ITS PRODUCT RECALL EXPENSES,
ITS RESERVES, AND ITS ESTIMATED FUTURE PRODUCT RETURNS**

43.     Peloton was founded in 2012. It sells exercise equipment and immersive, instructor-

led boutique fitness classes streamed to its customers. Peloton's fitness product portfolio includes

the Peloton Bike, Bike+, Tread, Tread+, and Peloton Guide. As of June 30, 2023, Peloton had over

6.5 million members.

44.     As the manufacturer of exercise equipment that is sold to the public, Peloton is

subject to federal regulations on consumer product safety. Accordingly, Peloton operates in a

highly regulated safety industry and has been, at all relevant times, required to meet the regulations

set for manufacturers and retailers of consumer products by the Consumer Product Safety Act

("CPSA"). The Company is monitored by the CPSC.

45.     On May 10, 2022, Peloton published a shareholder letter announcing the

Company's financial results for its third fiscal quarter of 2022, which ended March 31, 2022 (the

"3Q22 Shareholder Letter"). Therein, the Company explained Peloton's product recall expenses for its third quarter in a footnote:

> Represents adjustments and charges associated with the Tread and Tread+ product recall, as well as accrual adjustments. These include a reduction to Connected Fitness Products revenue for actual and estimated future returns of $17.5 million and $36.3 million, recorded costs in Connected Fitness Products cost of revenue associated with inventory write-downs and logistic costs of $2.0 million and $7.6 million, and operating expenses of $2.0 million and $5.0 million associated with recall-related hardware development costs, in each case for the three and nine months ended March 31, 2022, respectively.

46.     On the same day, Peloton also filed its third quarter financial results on Form 10-Q with the SEC (the "3Q22 10-Q"). Therein, the Company restated the statements referenced in ¶ 45, *supra*, regarding the Company's product recall expenses and estimated future product returns.

47.     The 3Q22 10-Q stated as follows regarding the Company's Peloton's product recall reserves:

> On May 5, 2021, the Company announced separate, voluntary recalls of its Tread+ and Tread products in collaboration with the [CPSC] and halted sales of these products to work on product enhancements. As a result of these recalls, the Company accrued for a reduction to Connected Fitness Products revenue for actual and estimated future returns of $17.5 million and $36.3 million for the three and nine months ended March 31, 2022, respectively, and a return reserve of $36.7 million is included within Accounts payable and accrued expenses in the accompanying condensed consolidated balance sheets related to the impacts of the recall. The estimated returns reserve is primarily based on historical and expected product returns.

48.     On August 25, 2022, Peloton issued a shareholder letter announcing the Company's financial results for its fourth fiscal quarter of 2022, which ended June 30, 2022 (the "4Q22 Shareholder Letter"). The 4Q22 Shareholder Letter detailed in a footnote the product recall expenses for the Company's fourth quarter:

> Represents adjustments and charges associated with the Tread and Tread+ product recall, as well as accrual adjustments. These include a reduction to Connected Fitness Products revenue for actual and estimated future returns of $12.5 million and $48.9 million, recorded costs in Connected Fitness Products cost of revenue associated with inventory write-downs and logistic costs of $0.5 million and $8.1

million, and operating expenses of $0.4 million and $5.4 million associated with recall-related hardware development costs, in each case for the three months and fiscal year ended June 30, 2022, respectively.

49.     On September 7, 2022, Peloton filed its full year 2022 financial results on Form 10-K with the SEC (the "2022 10-K"). Therein, the Company indicated that it had experienced a significant, sustainable reduction in expenses. In the 2022 10-K, the Company stated that Peloton's product recall expenses were $62.3 million for the full fiscal year that ended June 30, 2022, as compared to $100 million for the full fiscal year that ended June 30, 2021.

50.     In a footnote, the 2022 10-K also stated the following with respect to the product recall expenses:

> Represents adjustments and charges associated with the Tread and Tread+ product recall, as well as accrual adjustments. These include a reduction to Connected Fitness Products revenue for actual and estimated future returns of $48.9 million and $81.1 million, recorded costs in Connected Fitness Products cost of revenue associated with inventory write-downs and logistic costs of $8.1 million and $15.7 million, and operating expenses of $5.4 million and $3.2 million associated with recall-related hardware development costs, in each case for the fiscal years ended June 30, 2022 and 2021, respectively.

51.     The 2022 10-K also stated as follows regarding the product recall reserves:

> On May 5, 2021, the Company announced separate, voluntary recalls of its Tread+ and Tread products in collaboration with the [CPSC] and halted sales of these products to work on product enhancements. As a result of these recalls, the Company accrued for a reduction to Connected Fitness Products revenue for actual and estimated future returns of $48.9 million and $81.1 million for the fiscal years ended June 30, 2022 and 2021, and as of June 30, 2022 and 2021, a return reserve of $39.9 million and $40.8 million, respectively, is included within Accounts payable and accrued expenses in the accompanying Consolidated Balance Sheets related to the impacts of the recall. The estimated returns reserve is primarily based on historical and expected product returns.

52.     The 2022 10-K also stated that "predicting expected product returns based on historical returns [has] become[] less relevant, requiring reliance on highly subjective estimates based on our interpretation of how current conditions and factors will drive consumer behavior";

and that, "[s]ince the inception of the product recall, we have recorded return provisions as a reduction to Connected Fitness Products revenue of approximately $139.9 million."

53.     On October 25, 2022, the Company filed its 2022 proxy statement (the "2022 Proxy Statement"). Defendants Boone, Callaghan, Foley, Hoag, McCarthy, Mendez, Mildenhall, and Thomas-Graham solicited the 2022 Proxy Statement filed pursuant to Section 14(a) of the Exchange Act, which contained material misstatements and omissions..

54.     The 2022 Proxy Statement called for the Company shareholders to vote to elect Defendant Boone to the Board among other things.

55.     The 2022 Proxy Statement stated the following:

We are committed to good corporate governance, which strengthens the accountability of our board of directors (the "Board") and promotes the long-term interests of our stockholders.

\*          \*          \*

We are strongly committed to good corporate governance practices.

\*          \*          \*

Our Board also reviews strategic, operational, compliance and financial risk in the context of discussions, question and answer sessions, and reports from the management team at each regular board meeting, receives reports on all significant committee activities at each regular board meeting, and evaluates the risks inherent in significant transactions. Our audit committee assists our board in fulfilling its oversight responsibilities with respect to risk management.

\*          \*          \*

The risk oversight responsibility of our Board and its committees is supported by management level committees, which include our risk committee, executive product safety committee, and our disclosure committee.

The risk committee implements our overall enterprise risk management reporting processes in a manner designed to provide our Board and our personnel responsible for risk assessment across the organization with visibility into the identification, assessment, and management of critical risks and management's risk mitigation strategies. The risk committee meets at least semi-annually and its co-chairs, our head of the Internal Audit function and our head of the Compliance, Risk, and

Ethics function, present the full Enterprise Risk Management program to the audit committee and board on an annual basis, or as requested.

The executive product safety committee is a management level committee that informs the enterprise risk management function, and with responsibility for oversight of the Company's product safety compliance program, policies, and major processes. The product safety committee reviews product safety clearances throughout the product development lifecycle up to and including member experience through ongoing monitoring of safety-related data for our products. Co-chaired by our head of the Compliance, Risk, and Ethics function and our head of the Quality and Safety function and composed of senior leaders across our Legal, Technology, and Product teams, the product safety committee advises senior leadership, the, audit committee, and the board of directors, as applicable on all product safety-related matters and initiatives.

*        *        *

Our actions as a Company are guided by our values, including operating with honesty and integrity in all our business activities. As a company that aims to help others be their best selves, we hold ourselves to the highest possible standards. This belief informs our approach to corporate governance, our culture of compliance, responsible supply chain practices, and public sector engagement.

56.     Contrary to these statements, the Board willfully ignored, or recklessly failed to inform themselves of, the obvious problems with the Company's internal controls, practices, and procedures, and failed to make a good faith effort to correct the problems or prevent their recurrence.

57.     Specifically, the Board failed to exercise oversight in good faith over the effectiveness of Peloton's product safety and public reporting controls.

58.     On November 3, 2022, Peloton issued a shareholder letter announcing the Company's financial results for its first quarter 2023, which ended September 30, 2022 (the "1Q23 Shareholder Letter"). Therein, the Company explained Peloton's product recall expenses for its first quarter in a footnote:

Represents adjustments and charges associated with the Tread and Tread+ product recall, as well as accrual adjustments. These include a reduction to Connected Fitness Products revenue for actual and estimated future returns of $26.5 million and $11.4 million, recorded costs in Connected Fitness Products cost of revenue

associated with inventory write-downs and logistic costs of $2.5 million and $0.5 million, and operating expenses of zero and $1.0 million associated with recall-related hardware development costs, in each case for the three months ended September 30, 2022 and 2021, respectively.

59.     On the same day, Peloton filed its first quarter financial report on Form 10-Q with the SEC for its quarter that ended September 30, 2022 (the "1Q23 10-Q"). Therein, the Company restated the same statements as referenced in ¶¶ 45-53, 55, 58, *supra*, regarding the Company's product recall expenses and estimated future product returns.

60.     The 1Q23 10-Q stated as follows with respect to Peloton's product recall reserves:

On May 5, 2021, the Company announced separate, voluntary recalls of its Tread+ and Tread products in collaboration with the [CPSC] and halted sales of these products to work on product enhancements. On October 18, 2022, the CPSC and the Company jointly announced that consumers now have more time to get a full refund if they wish to return their recalled Tread+. With the extension of the full refund period by one additional year, to November 6, 2023, the Company expects that more Members will opt for a full refund, and has accordingly increased the Company's return reserve. The Company accrued for a reduction to Connected Fitness Products revenue for actual and estimated future returns of $26.5 million and $11.4 million for the three months ended September 30, 2022 and 2021, respectively, and a return reserve of $57.9 million and $31.1 million, respectively, was included within Accounts payable and accrued expenses in the accompanying Condensed Consolidated Balance Sheets related to the impacts of the Tread+ recall. The estimated returns reserve is primarily based on historical and expected product returns.

61.     On February 1, 2023, Peloton issued a shareholder letter announcing its financial results for its second fiscal quarter of 2023, which ended December 31, 2022 (the "2Q23 Shareholder Letter"). Therein, the Company represented that it purportedly had experienced a significant and sustainable reduction in product recall expenses. Among other things, the 2Q23 Shareholder Letter reported that product recall expenses were $2.3 million for the three months ended December 31, 2022, compared to $14.7 million for the same period the prior year.

62.     In a footnote, the 2Q23 Shareholder Letter stated  the following with respect to product recall expenses:

Represents adjustments and charges associated with the Tread and Tread+ product recall, as well as accrual adjustments. These include a reduction to Connected Fitness Products revenue for actual and estimated future returns of zero and $26.5 million, recorded costs in Connected Fitness Products cost of revenue associated with inventory write-downs and logistic costs of zero and $2.5 million, and operating expenses of $2.3 million and $2.3 million associated with recall-related hardware development costs, in each case for the three and six months ended December 31, 2022, respectively.

63.     On the same day, Peloton filed its second quarter financial results on Form 10-Q with the SEC for its quarter that ended December 31, 2022 (the "2Q23 10-Q"). Therein, the Company restated the statements referenced in ¶¶ 45-53, 55, 58-62, *supra*, regarding the Company's product recall expenses and estimated future product returns.

64.     The 2Q23 10-Q stated as follows with respect to the Company's product recall reserves:

For the recall-to-date period, the Company recognized a reduction to Connected Fitness Products revenue for actual and estimated future returns of $166.9 million, and return reserves of $44.5 million and $26.7 million were included within Accounts payable and accrued expenses in the Condensed Consolidated Balance Sheets related to the impacts of the recall as of December 31, 2022 and 2021, respectively. . . . Recall charges are based upon estimates associated with our expected and historical consumer response rates.

65.     The 2Q23 10-Q also stated that the Company "continue[d] to work cooperatively with the CPSC to further enhance the safety of our products."

66.     On May 4, 2023, Peloton published a shareholder letter announcing the Company's financial results for its third quarter of 2023, which ended March 31, 2023 (the "3Q23 Shareholder Letter"). Therein, the Company represented that it had purportedly experienced a significant and sustainable reduction in expenses. Among other things, it reported that expenses for product recall related matters were $9.7 million and $40.9 million, respectively, for the three and nine months ended March 31, 2023, compared to $21.4 million and $49 million, respectively, for the same periods the year prior.

67.     In a footnote, the 3Q23 Shareholder Letter stated the following regarding these product recall expenses:

> Represents adjustments and charges associated with product recall related matters, as well as accrual adjustments. These include an adjustment to Connected Fitness Products revenue for actual and estimated future returns of $(11.9) million and $14.6 million, recorded costs in Connected Fitness Products cost of revenue associated with recall related matters of $21.6 million and $24.1 million, and operating expenses of zero and $2.3 million associated with recall-related hardware development costs, in each case for the three and nine months ended March 31, 2023, respectively.

68.     Compared to prior quarters, the Company stopped attributing product recall expenses to adjustments and charges associated with the Tread and Tread+ product recall. Instead, the Company attributed product recall expenses to adjustments and charges associated with more generalized "product recall related matters." Importantly, Peloton failed to inform investors whether such charges, if any, were attributable to actual or estimated future returns for the Company's other so-called Connected Fitness Products, particularly the Company's Peloton Bikes.

69.     On the same day, Peloton also filed its third quarter financial results on Form 10-Q with the SEC for the period that ended March 31, 2023 (the "3Q23 10-Q"). Therein, the Company restated the statements referenced in ¶¶ 45-55, 58-68, *supra*, regarding the Company's product recall expenses and estimated future product returns.

70.     The 3Q23 10-Q stated that "[d]uring the three months ended March 31, 2023, based on lower actual returns than previously estimated, the Company has updated its return reserve assumptions and decreased the Company's return reserve."

71.     The 3Q23 10-Q further stated as follows regarding Peloton's product recall reserves:

> For the recall-to-date period, the Company recognized a reduction to Connected Fitness Products revenue for actual and estimated future returns of $154.4 million,

and return reserves of $29.3 million and $36.7 million were included within Accounts payable and accrued expenses in the Condensed Consolidated Balance Sheets as of March 31, 2023 and 2022, respectively, related to the impacts of the recall . . . . ***Recall charges are based upon estimates associated with our expected and historical consumer response rates***.

(Emphasis added.)

72.     The 3Q23 10-Q also assured investors that the Company would "continue to work cooperatively with the CPSC to further enhance the safety of our products."

73.     The statements identified in ¶¶ 45-55, 58-72 were materially false and misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, the Individual Defendants failed to disclose to investors that: (i) the seat posts for certain of the Company's Peloton Bikes were prone to break or otherwise detach during use, rendering bicycles unsafe for users; (ii) as a result, the Company was likely to recall millions of Peloton Bikes; (iii) accordingly, Peloton overstated its efforts to enhance the safety of its products, understated its estimated future returns, and downplayed the Company's need to book additional reserves for future product recall expenses; and (iv) as a result, Defendants' statements about Peloton's business, operations, and prospects were materially false and misleading and lacked a reasonable basis at all relevant times.

74.     On May 11, 2023, during pre-market hours, the CPSC issued a press release announcing the recall of around 2.2 million Peloton Bikes, stating that "[t]he bike's seat post assembly can break during use, posing fall and injury hazards to the user." In relevant part, the press release stated the following:

**Recall Details:**

**Description:**

This recall involves Peloton Bikes with model number PL01. The Peloton Bike measures 4 ft. long x 2 ft. wide, and has an adjustable seat, handlebar, and screen,

which tilts up and down to accommodate different heights. The Peloton name and the model number are displayed on the inside front fork, near the flywheel.

**Remedy:**

Consumers should immediately stop using the recalled exercise bikes and contact Peloton for a free repair. Peloton is offering consumers a free seat post that can be self-installed.

**Incidents/Injuries:**

Peloton has received 35 reports of the seat post breaking and detaching from the bike during use, including 13 reports of injuries including a fractured wrist, lacerations and bruises due to falling from the bike.

**Sold At:**

Peloton and Dick's Sporting Goods stores nationwide and online at Onepeloton.com, Amazon.com and Dicksportinggoods.com from January 2018 through May 2023 for about $1,400.

**Distributor(s):**

Peloton Interactive Inc., of New York

75.      On this news, Peloton's Class A common stock price fell $0.67 per share, or 8.9%, to close at $6.86 per share on May 11, 2023.

**THE INSIDER TRADING DEFENDANTS SELL
COMPANY STOCK AT ARTIFICIALLY INFLATED PRICES**

76.      During the Relevant Period of wrongdoing described above, Peloton insiders sold Company stock at artificially inflated prices while in possession of material non-public Company information.

77.      The Insider Trading Defendants (Cortese and Woodworth) sold Company stock while it was trading at artificially inflated prices due to the false and misleading statements alleged herein and while they were in possession of material non-public Company information.

78.      Between the Relevant Period, the following Defendants sold over $ 2.27 million in Company stock:

- Defendant Cortese sold 159,501 shares.

- Defendant Woodworth sold 4,530 shares.

79.     While many of the Company's stockholders lost significant money with the shares dropping substantially, the Insider Trading Defendants sold their shares at artificially high prices and avoided the staggering losses suffered by other stockholders.

80.     As a result, the Insider Trading Defendants benefitted from the artificial inflation of the price of the Company's stock and the resulting increase in the value of Peloton stock and stock options they held.

## AN INVESTOR FILES A SECURITIES CLASS ACTION

81.     As noted, on June 9, 2023, a purported purchaser of Company stock commenced the Securities Class Action alleging that throughout the class period of May 10, 2022 and May 10, 2023, Defendants made materially false and/or misleading statements, failing to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, the Securities Class Action alleges that defendants failed to disclose to investors that: (i) the seat posts for certain of the Company's Peloton Bikes were prone to break or otherwise detach during use, rendering them unsafe for users; (ii) as a result, the Company was likely to recall millions of Peloton Bikes; (iii) accordingly, Peloton overstated its efforts to enhance the safety of its products, understated its estimated future returns, and downplayed the Company's need to book additional reserves for future product recall expenses; (iv) all the foregoing, once revealed, was likely to negatively impact the Company's business and financial results and reputation; and (v) as a result, the Company's public statements were materially false and misleading. Since that time, additional investors have come forward seeking to serve as lead plaintiff in the case.

## THE INDIVIDUAL DEFENDANTS' MISCONDUCT
## DIRECTLY AND PROXIMATELY CAUSES DAMAGES TO PELOTON

82.     As a result of the Individual Defendants' improprieties, Peloton disseminated improper public statements concerning Peloton's operations, prospects, and internal controls. This misconduct has devastated Peloton's credibility.

83.     As a direct and proximate result of the Individual Defendants' actions during the Relevant Period, Peloton has expended, and will continue to expend, significant sums of money defending and paying any settlement in the Securities Class Action.

84.     As a direct and proximate result of the Individual Defendants' actions as alleged above, Peloton's market capitalization has been substantially damaged, losing millions of dollars in value because of the conduct described herein.

85.     The actions of the Individual Defendants have irreparably damaged Peloton's corporate image and goodwill. For at least the foreseeable future, Peloton will suffer from what is known as the "liar's discount," a term applied to the stocks of companies that have been implicated in illegal behavior and have misled the investing public. As a result, Peloton's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## PLAINTIFFS HAVE BEEN STOCKHOLDERS AT ALL
## RELEVANT TIMES AND WILL FAIRLY AND ADEQUATELY
## REPRESENT THE COMPANY'S AND ITS STOCKHOLDERS' INTERESTS

86.     Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

87.     Plaintiffs bring this action derivatively in the right and for the benefit of the Company to redress the Individual Defendants' breaches of fiduciary duties.

88.     Plaintiffs are owners of Peloton common stock and were owners of Peloton common stock at all times relevant hereto.

89.     Plaintiffs will adequately and fairly represent the interests of the Company and its stockholders in enforcing and prosecuting the Company's rights.

## DEMAND IS FUTILE BECAUSE EACH DIRECTOR DEFENDANT FACES A SUBSTANTIAL LIKELIHOOD OF PERSONAL LIABILITY

90.     At the time Plaintiffs commenced this action, the Board consisted of seven directors: Boone, Callaghan, Hoag, McCarthy, Mendez, Mildenhall, and Thomas-Graham. The Director Defendants are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

91.     The Director Defendants all face a substantial likelihood of liability for their individual misconduct. The Director Defendants were directors throughout the Relevant Period of the false and misleading statements and, as such, had a fiduciary duty to ensure the accuracy of the Company's SEC filings, press releases, and other public statements and presentations concerning Peloton's business, operations, prospects, internal controls, and financial statements.

92.     The Director Defendants owed and owe a duty to act good faith and with due diligence, to exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust and effective and were being implemented effectively, and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care. Instead, they knowingly and consciously reviewed, authorized, and/or caused the publication of the materially false and misleading statements discussed above that caused the Company's stock to trade at artificially inflated prices.

93.     Here, among other things, the Director Defendants failed to timely recall the Company's Peloton Bikes and, thereby, overstated its efforts to enhance the safety of its products, understated its estimated future returns, and downplayed the Company's need to book additional reserves for future product recall expenses.

94.    The Director Defendants also ignored red flags of the Officer Defendants' false and misleading statements in the form of publicly available analyses. Such analyses suggested that the Company was understating its estimated future returns and needed to book additional reserves for future recall expenses.

95.    The Director Defendants face a substantial likelihood of personal liability because of their conscious and knowing authorization of false and misleading statements, their failure to timely correct such statements, their failure to take necessary and appropriate steps to ensure that the Company's internal controls were sufficiently robust and effective and were being implemented effectively, and their failure to take necessary and appropriate steps to ensure that the Board's duties were being discharged in good faith and with the required diligence. These acts and omissions constitute breaches of the fiduciary duties of loyalty and good faith.

96.    If the Director Defendants were to bring a suit on behalf of Peloton to recover damages sustained as a result of this misconduct, they would expose themselves to significant liability. For this reason, Plaintiffs' making a demand would be futile.

### THE AUDIT COMMITTEE DEFENDANTS FACE A
### GREATER LIKELIHOOD OF PERSONAL LIABILITY

97.    The Audit Committee Defendants (Boone, Callaghan, and Mendez) participated in and knowingly approved the filing of false financial statements as members of the Audit Committee during the Relevant Period. The Audit Committee Defendants were obligated to review the Company's annual and quarterly reports to ensure their accuracy. Instead, they failed to comply with the Audit Committee Charter. They did not ensure the integrity of the Company's financial statements and financial reporting process;  its systems of internal accounting and financial controls; and other financial information disseminated by the Company. For this reason, the Audit

Committee Defendants face a substantial likelihood of personal liability for the misconduct described herein and could not exercise disinterested business judgment in considering a demand.

### DEFENDANTS HOAG AND McCARTHY HAVE A PERSONAL AND BUSINESS RELATIONSHIP AND CANNOT EXERCISE INDEPENDENT BUSINESS JUDGMENT

98.     Defendants Hoag and McCarthy lack independence to consider a demand because of their longstanding close business and personal relationship.

99.     Defendant Hoag is a co-founder and General Partner of venture capital firm called Technology Crossover Ventures ("TCV"), where he has served since June 1995. He served on the board of directors of TCV Acquisitions Corp. from 2021 until its liquidation in 2023. He has also served as a member of the board of directors of Netflix, Inc. ("Netflix") since 1999. TCV invested in Netflix in or about 1997, making it one of Netflix's earliest investors.

100.    Defendant McCarthy served as CFO and Principal Accounting Officer of Netflix from 1999 to 2010. Additionally, from 2011 to February 2022, Defendant McCarthy served as a consultant at TCV.

101.    Defendants Hoag and McCarthy have been together in business for at least twenty years. They cannot exercise independent judgment in considering a demand to investigate and prosecute the claims asserted in this action because it would require them to authorize suing the Company and the members of the Board, including each other. Therefore, Defendants Hoag and McCarthy lack the ability to exercise independent business judgment in considering a demand.

### DEFENDANTS BOONE AND THOMAS-GRAHAM HAVE A PERSONAL AND BUSINESS RELATIONSHIP AND CANNOT EXERCISE INDEPENDENT BUSINESS JUDGMENT

102.    Defendant Boone has served as a member of the board of directors of Rivian Automotive, Inc. ("Rivian") since August 2020. She also served as a member of Rivian's audit

committee, sitting as its chair since at least 2021. Defendant Boone has also served on Rivian's compensation committee since at least 2021.

103.    Defendant Thomas-Graham has served as a member of the board of directors of Rivian since August 2021. She also served as a member of Rivian's nominating and governance committee, sitting as its chair since its formation in November 2021. Defendant Thomas-Graham also has served on Rivian's audit committee since 2021.

104.    Defendants Boone and Thomas-Graham serve together on two boards, Peloton's and Rivian's. If they are found liable for the claims alleged herein, it will call into question their aptitude to also serve on Rivian's board of directors and other boards of directors on which they currently sit.

105.    Particularly, if Defendant Boone, is found liable for the allegations alleged herein, it would also call into question her competence to oversee Rivian's internal controls over financial reporting, disclosure controls and procedures, and the preparation of Rivian's audit committee report as required by the SEC.

106.    Accordingly, Defendants Boone and Thomas-Graham could not exercise independent or disinterested business judgment in considering a demand to investigate and prosecute the claims asserted in this action because it would require them to sue the Company and the members of the Board, including each other.

## DEFENDANT McCARTHY LACKS INDEPENDENCE

107.    Defendant McCarthy is not an independent director. McCarthy is not independent because his principal occupation is CEO and President of Peloton. As explained by a Form 8-K filed with the SEC on February 8, 2022, Defendant McCarthy and the Company entered into an employment offer letter dated February 7, 2022 whereby McCarthy is eligible for "an annual base salary of $1,000,000," "a stock option award to purchase 8,000,000 shares of the Company's Class

A Common Stock," and "$150,000 reimbursement in connection with relocation expenses" among other things for serving as CEO and President. This amount is material to Defendant McCarthy, and therefore, he would not be able to impartially consider a demand against Defendants Callaghan, Hoag, and Thomas-Graham, who are members of the Compensation Committee, who approve his executive compensation. Accordingly, Defendant McCarthy cannot exercise independent business judgment in considering a demand.

### DEFENDANT MILDENHALL LACKS INDEPENDENCE

108.    Defendant Mildenhall has served as a member of the Board since February 2022. He also is the Co-Founder and Executive Chairman of TwentyFirstCenturyBrand, a consumer brand strategy and marketing consultancy firm.

109.    Peloton and TwentyFirstCenturyBrand had a commercial relationship within the three years before Defendant Mildenhall joined the Board. In fact, the Company's 2022 proxy statement concedes that Defendant Mildenhall is not an independent director due to the Company's prior transactions with TwentyFirstCenturyBrand.

110.    To be considered as an independent director under Nasdaq rules, Peloton and TwentyFirstCenturyBrand must not have engaged in a commercial transaction during any of the three fiscal years before Defendant Mildenhall joined the Board.

111.    Hence, Defendant Mildenhall is incapable of exercising independent business judgment in considering a demand.

### DEFENDANT MENDEZ LACKS INDEPENDENCE

112.    Defendant Mendez approved the appointment of Defendant Boone as Chair of the Board. With this action, he has implicitly approved Defendant Boone's and other Individual Defendants' inaction regarding the allegations in this action. Additionally, Defendant Mendez is eligible to receive substantial compensation in the form of stock options, restricted stock units (or

RSUs), or a combination of both directly connected to his service as a member of the Board. Accordingly, Defendant Mendez cannot exercise independent business judgment in considering a demand to investigate and prosecute this action.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

113.    In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants caused the Company to conceal the true facts as alleged herein. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

114.    The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct were, among other things, to (i) facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty and unjust enrichment; (ii) conceal adverse information concerning the Company's operations, financial condition, future business prospects, and internal controls; and (iii) artificially inflate the Company's stock price.

115.    The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company purposefully, recklessly, or with gross negligence to engage in improper accounting methods, conceal material facts, fail to correct such misrepresentations, and violate applicable laws. In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein. The Individual Defendants were direct, necessary, and substantial participants in the common enterprise and/or common course of conduct complained here because the action described herein occurred under the authority and approval of the Board.

116.    Each of the Individual Defendants aided, abetted, and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the

commission of the wrongdoing complained of herein, each of the Individual Defendants acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in or substantially assisted the accomplishment of that wrongdoing or was aware or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

117.    At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and Peloton and was at all times acting within the course and scope of such agency.

**FIRST CAUSE OF ACTION**
**Against the Securities Class Action Defendants for**
**Contribution under Sections 10(b) and 21D of the Exchange Act and Rule 10b-5**

118.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

119.    Peloton, along with the Securities Class Action Defendants (Coddington, McCarthy, and Woodworth), are named as defendants in the Securities Class Action, which asserts claims under the federal securities laws for violations of Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5. If the Company is found liable in the Securities Class Action for these violations of the federal securities laws, the Company's liability will be in whole or in part due to the Securities Class Action Defendants' willful and/or reckless violations of their obligations as officers and/or director of Peloton.

120.    Because of their positions of control and authority as officers and/or director of Peloton, the Securities Class Action Defendants were able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of Peloton, including the wrongful acts complained of herein and in the Securities Class Actions.

121.    Accordingly, the Securities Act Defendants are liable under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), which creates an implied private right of action for contribution,

and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of a private right of action for contribution arising out of violations of the Exchange Act.

122.    As such, Peloton is entitled to receive all appropriate contribution or indemnification from the Securities Class Action Defendants.

**SECOND CAUSE OF ACTION**
**Against the Individual Defendants for**
**<u>Violations of § 14(a) of the Exchange Act and SEC Rule 14a-9</u>**

123.    Plaintiff incorporates by reference and realleges each and every allegation set forth above as though fully set forth herein.

124.    Rule 14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

125.    The 2022 Proxy Statement violated Section 14(a) and Rule 14a-9 because it solicited Peloton stockholder votes for, inter alia, director reelection, while simultaneously misrepresenting and/or failing to disclose the Company's shortcomings in connection with its retention and addition of subscribers.

126.    The Individual Defendants made untrue statements of material facts and omitted to state material facts necessary to make the statements that were made not misleading in violation of Section 14(a) and Rule 14a-9. By virtue of their positions within the Company and roles in the process and in the preparation of the 2022 Proxy Statement, the Individual Defendants were aware of this information and of their duty to disclose this information in the 2022 Proxy Statement.

127.    The Individual Defendants knew that the statements contained in the 2022 Proxy Statement were materially false and misleading.

128.   The omissions and false and misleading statements in the 2022 Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the re-election of directors. Indeed, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the 2022 Proxy Statement and in other information reasonably available to stockholders.

129.   As a direct and proximate result of the dissemination of the false and misleading 2022 Proxy Statement that the Individual Defendants used to obtain stockholder approval of and thereby re-elect directors, nominal defendant Peloton suffered damage and actual economic losses in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### Against the Individual Defendants for Breach of Fiduciary Duties

130.   Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

131.   Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Peloton's business and affairs.

132.   Each of the Individual Defendants violated and breached his or her fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

133.   The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Peloton.

134.   In breach of their fiduciary duties owed to Peloton, the Individual Defendants willfully or recklessly made, or caused or permitted the Company to make, false and misleading statements and omissions of material fact that failed to disclose, *inter alia*, that Peloton Bikes were

causing serious injuries to people, would likely be recalled and that the Company needed to book additional reserves to cover future product recall expenses.

135.    Accordingly, Peloton's public statements were materially false, misleading, and lacked a reasonable basis during the Relevant Period, thereby causing the stock to trade at artificially inflated prices.

136.    The Individual Defendants failed to and caused the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact referenced herein, thereby rendering themselves personally liable to the Company for breaching their fiduciary duties.

137.    Also, in breach of their fiduciary duties, the Individual Defendants failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls.

138.    The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct the Company's public statements. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and disclose such facts, even though such facts were available to them. Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities.

139.    The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the fraudulent schemes set forth herein and to fail to maintain adequate internal controls. The Individual Defendants had actual knowledge that the Company was engaging in the fraudulent schemes set forth herein and that internal controls were

not adequately maintained or acted with reckless disregard for the truth in that they caused the Company to improperly engage in the fraudulent schemes and to fail to maintain adequate internal controls even though such facts were available to them. They committed such improper conduct knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities. The Individual Defendants should have acted in good faith and taken appropriate action to stop the schemes alleged herein and to prevent them from continuing to occur.

140.    These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

141.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Peloton has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

**FOURTH CAUSE OF ACTION**
**Against the Individual Defendants for Unjust Enrichment**

142.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

143.    By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Peloton.

144.    The Individual Defendants benefitted financially from the improper conduct. They received unjustly lucrative bonuses tied to the false and misleading statements and received bonuses, stock options, or similar compensation from Peloton that was tied to the performance or artificially inflated valuation of Peloton or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

145.     Plaintiffs, as stockholders and representatives of Peloton, seek restitution from the Individual Defendants and requests that this Court disgorge all profits—including from insider sales, benefits, and other compensation, including any performance-based or valuation-based compensation—obtained by the Individual Defendants from their wrongful conduct and breach of their fiduciary duties.

146.     Plaintiffs on behalf of Peloton have no adequate remedy at law.

**FIFTH CAUSE OF ACTION**
**<u>Against the Individual Defendants for Waste of Corporate Assets</u>**

147.     Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

148.     As a further result of the foregoing, the Company will incur many millions of dollars of legal liability and/or costs to defend legal actions (evidenced, for example, by the Securities Class Action), to engage in internal investigations, and to lose financing opportunities from investors and business from future customers who no longer trust the Company and its products.

149.     As a result of the waste of corporate assets, the Individual Defendants are each liable to the Company.

150.     Plaintiffs on behalf of Peloton have no adequate remedy at law.

**SIXTH CAUSE OF ACTION**
**<u>Against the Individual Defendants for Aiding and Abetting</u>**

151.     Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

152.     Each of the Individual Defendants acted and is acting with knowledge of, or with disregard to, the fact that the Individual Defendants are in breach of their fiduciary duties to Peloton and have participated in a conspiracy in breach of fiduciary duties.

153.    In committing the wrongful acts alleged herein, each of the Individual Defendants has pursued or joined in the pursuit of a common course of conduct. The Individual Defendants have acted in concert with and conspired with one another in furtherance of their common plan or design. In addition to pursuing the wrongful conduct that gives rise to their primary liability, the Individual Defendants also aided, abetted, and assisted each other in breaching their respective duties.

154.    The Individual Defendants collectively and individually initiated and followed a course of conduct that violated the federal securities laws; authorized corporate actions to serve their own personal interests rather than the interests of the Company and its stockholders; misrepresented material facts about the Company, its financial condition, and business prospects; prevented the disclosure of material information necessary to make statements complete and accurate; and failed to implement and maintain an adequate system of internal controls and corporate governance practices.

155.    The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, including violations of the federal securities laws and breaches of fiduciary duty.

156.    Each of the Individual Defendants played a direct, necessary, and substantial part in the conspiracy, common enterprise, and common course of conduct complained of herein.

157.    Each of the Individual Defendants aided, abetted, and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, the Individual Defendants acted with

knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and were aware of their overall contributions to and furtherance of the wrongdoing.

## SEVENTH CAUSE OF ACTION
### Against the Insider Trading Defendants for
### <u>Insider Selling and Misappropriation of Information</u>

158.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

159.    At the time of their stock sales set forth herein, the Insider Trading Defendants (Cortese and Woodworth) knew of the information described above and sold Peloton common stock based on  such information.

160.    The information described above was proprietary, non-public information concerning the Company. It was a proprietary asset belonging to the Company, which the Insider Trading Defendants used for their own benefit when they sold Peloton common stock.

161.    The Insider Trading Defendants' sales of Company common stock while they were in possession and control of this material adverse non-public information was a breach of their fiduciary duties of loyalty and good faith.

162.    Because the use of the Company's proprietary information for their own gain constitutes a breach of Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits that the Insider Trading Defendants obtained thereby.

## EIGHTH CAUSE OF ACTION
### <u>Against the Insider Trading Defendants for Indemnification</u>

163.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

164.    The Individual Defendants' misconduct described above gives rise to the Company's alleged liability, and thereby, the Individual Defendants have directly and proximately caused substantial injury to Peloton.

165.    Therefore, on behalf of the Company, Plaintiffs seek damages from the Individual Defendants in the form of indemnification.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment as follows:

A.    Declaring that Plaintiffs may maintain this derivative action on behalf of Peloton and that Plaintiffs are proper and adequate representatives of the Company;

B.    Awarding the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and violations of the federal securities laws;

C.    Ordering the Insider Trading Defendants to disgorge monies obtained as a result of their sale of Peloton stock while in possession of insider information as described herein;

D.    Awarding prejudgment interest to the Company;

E.    Granting appropriate equitable relief to remedy the Individual Defendants' breaches of fiduciary duties and other violations of law;

F.    Awarding to Plaintiffs the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees and costs and expenses; and

G.    Granting such other and further relief as the Court deems just and proper.


## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: September 27, 2023                    Respectfully submitted,

*/s/ Lawrence P. Eagel*

Lawrence P. Eagel
Gabriela A. Cardé *(pro hac vice to be submitted)*
BRAGAR EAGEL & SQUIRE, P.C.
810 Seventh Avenue, Suite 620
New York, New York 10019
Telephone: 212-308-5888
Facsimile: 212-486-0462
Email: eagel@bespc.com
      carde@bespc.com

Badge Humphries *(pro hac vice to be submitted)*
BRAGAR EAGEL & SQUIRE, P.C.
2113 Middle Street, Suite 305
Sullivan's Island, South Carolina 29482
Telephone:  843-883-7444
Email:  humphries@bespc.com

*Attorney for Plaintiffs*

**VERIFICATION**

I, Courtney Cooper, hereby verify that I have authorized the filing of the attached Verified Stockholder Derivative Complaint ("Complaint"). I have reviewed the allegations made in the Complaint, and as to those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and, for that reason, believe them to be true. I further verify that I am a current holder, and have been a holder, of Peloton Interactive, Inc common stock at all relevant times.

Executed this ⎽⎽18⎽⎽ day of ⎽⎽September⎽⎽, 2023.

Courtney Cooper (Sep 18, 2023 19:49 EDT)

⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽

Courtney Cooper

**VERIFICATION**

I, Abdo Faissal, hereby verify that I have authorized the filing of the attached Verified Stockholder Derivative Complaint ("Complaint"). I have reviewed the allegations made in the Complaint, and as to those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and, for that reason, believe them to be true. I further verify that I am a current holder, and have been a holder, of Peloton Interactive, Inc common stock at all relevant times.

Executed this 18 day of september, 2023.

*Abdo Faissal*
Abdo Faissal (Sep 18, 2023 13:14 PDT)

Abdo Faissal